IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

|  |  |
|---|---|
| KENNETH COLEMAN, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>NATIONAL INDEMNITY COMPANY,<br><br>                    Defendant. | CV-19-39-GF-JTJ<br><br><br>MEMORANDUM AND<br>ORDER |

Defendant National Indemnity Company (National) has moved the Court to dismiss Plaintiffs' First Amended Class Action Complaint (Amended Complaint) pursuant to Fed. R. Civ. P. 12(b)(6). (Docs. 56, 57 and 63). Plaintiffs oppose the motion. (Doc. 62). National's motion should be granted.

## I.    <u>INTRODUCTION</u>

On February 1, 2023, Plaintiffs filed an Amended Complaint against National. (Doc. 54). Plaintiffs are mine workers and family members who suffered asbestos-related injuries in Libby, Montana.

Prior to this lawsuit, Plaintiffs brought negligence claims against the State of Montana (State) for failing to warn them of the dangers associated with asbestos exposure at the W.R. Grace vermiculite mine in Libby, Montana, resulting in bodily

injuries. (Doc. 54, ¶¶ 9 and 10).  Plaintiffs settled their claims against the State by one of two settlements: "Round 2", approved by Montana's Eighth Judicial District Court (State District Court) on January 18, 2017; and "Round 3", approved by the Asbestos Claims Court of the State of Montana (Asbestos Claims Court) on January 7, 2019. (Id., ¶ 51).

National provided liability insurance to the State from July 1, 1973, through July 1, 1975.  Plaintiffs' Amended Complaint seeks to recover compensatory and punitive damages from National based upon the following causes of action: (1) alleged violations of Montana's Unfair Trade Practices Act (UTPA); (2) and (3) alleged common law bad faith; (4) alleged failure to advance pay medical expenses under *Ridley v. Guaranty National Ins. Co.*; and (5) and alleged disgorgement of profits.

## II.  BACKGROUND

Plaintiffs were among a group of over a thousand claimants who brought negligence claims against the State between 2000 and 2015.  The extensive history regarding the near decade long coverage dispute that ensued between National and the State related to whether National owed the State the duties to defend and indemnify it for these underlying tort claims is detailed in *National Indem. Co. v. State,* 499 P.3d 516 (Mont. 2021).

## III.  LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a

complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper under Rule 12(b)(6) when the complaint "either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the motion to dismiss stage, the Court "take[s] all well-pleaded factual allegations in the complaint as true, construing them in the light most favorable to the nonmoving party." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018).

However, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *National Association for the Advancement of Psychoanalysis v. California Board of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000). Additionally, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

On a motion to dismiss, a court may consider "documents [that] have been incorporated into the complaint by reference or are matters of which a court may take judicial notice." *Orellana v. Mayorkas,* 6 F.4th 1034, 1042-43 (9th Cir. 2021).

3

A court may assume an incorporated document's contents are true for purposes a motion to dismiss under Rule 12(b)(6). *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Finally, dismissal without leave to amend is appropriate when it is "clear that the complaint cannot be saved by further amendment." *Dumas v. Kipp*, 90 F.3d 386, 389 (9th Cir. 1996).

## IV.    <u>DISCUSSION</u>

### A. <u>National had a reasonable basis in law or in fact for contesting Plaintiffs' claims against the State.</u>

The Amended Complaint's first cause of action alleges that National violated the UTPA by violating Mont. Code Ann. §§ 33-18-201(1), (4), (5), (6) and (13). These UTPA claims are asserted on behalf of Plaintiffs who settled their claims against the State in "Round 3". (Doc. 54, ¶ 70). The "Round 2" Plaintiffs do not assert UTPA claims against National. However, the Round 2 Plaintiffs, along with the Round 3 Plaintiffs, allege that National committed common law bad faith in their second and third causes of action.  (Doc. 54, ¶¶ 83-97).

Mont. Code Ann. § 33-18-242(6) provides National cannot be held liable under the UTPA if it had "a reasonable basis in law or in fact for contesting the claim(s) or the amount of the claim(s)."  Similarly, National cannot be liable for common law bad faith if it had a reasonable basis in law or in fact for contesting Plaintiffs' claims against the State.  *Cranska v. UMIA Insurance, Inc.*, 709 F. Supp.

3d 1200, 1215 (D. Mont. 2024), citing *Palmer by Diacon v. Farmers Ins. Exchange*, 861 P.2d 895, 901 (Mont. 1993).

### 1. Plaintiffs' judicial admissions establish that National had a reasonable basis in law or in fact for contesting Plaintiffs' claims against the State.

Under a Rule 12(b)(6) motion, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)). "A court may treat such a document as 'part of the complaint', and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The gravamen of Plaintiffs' claims against National is that the Montana Supreme Court's decision in *Orr v. State*, 106 P.3d 100 (Mont. 2004), established that the State's liability for their injuries was reasonably clear. (Doc. 54, ¶¶ 11 and 12). Plaintiffs' allegations are directly at odds with the *Orr* court's assessment of

the State's liability for mine workers' and their families' claims against the State.

To be clear, the *Orr* court summarized its view of the State's liability as follows:

> The difficult questions presented by industry standards forty years old
> and the unusual delayed onset of the Miner's injuries advance novel
> questions of law. . . . The simple truth is that the law attendant to these
> facts is both untested and arguably susceptible to different
> interpretations. . . . Contrary to the dissent's insistence, *we have not
> handed the Plaintiffs a remedy—they still face the daunting task of
> establishing that the State breached its duty to them and in so doing,
> caused their damages and injuries.*

*Id.* at ¶ 81 (emphasis added).

Plaintiffs' allegations in this action about the State's liability being reasonably

clear are also at odds with the representations they and the State made in joint

motions filed with the State District Court on January 5, 2017, and the Asbestos

Claims Court on January 4, 2019, in which they sought court approval of their

proposed settlements. (Docs. 58-6 and 58-8). National relies on Plaintiffs'

statements in these joint motions as its basis for asserting the affirmative defense

that it had a reasonable basis in law or in fact for contesting Plaintiffs' claims or the

amount of their claims. (Doc. 57, pp. 19-22).

In the January 5, 2017 joint motion, the Round 2 Plaintiffs and the State

represented the following to the State District Court in seeking its approval of their

proposed settlement:

> The MHSL Libby Mine Claimants' cases and claims involve numerous
> disputed factual questions and unresolved legal questions. Given the

> numerous disputed factual questions and unresolved legal issues, the
> risks of continued litigation, and the complexity of continuing litigation
> of the cases and claims, the parties believe the settlement is reasonable.

(Doc. 58-6).

The State District Court's January 18, 2017 order, granting this joint motion

and approving the settlement includes the following:

> The MHSL Libby Mine Claimants' cases and claims involve numerous
> disputed factual questions and unresolved legal questions and
> significant risks of continued litigation to all parties. Given these factors
> and the complexity of continuing litigation of the cases and claims the
> settlement is reasonable.

(Doc. 73-1).

In the January 3, 2019 motion, the Round 3 Plaintiffs and the State represented

the following to the Asbestos Claims Court in seeking its approval of their proposed

settlements:

> Litigation against the State concerning alleged asbestos-related injury
> and damages arising out of the State's alleged actions/inactions at the
> W.R. Grace operations in and near Libby, Montana, has spanned nearly
> 18 years. The facts and legal theories involving that litigation are
> extraordinarily complex. The MHSL Libby Mine Claimants' lawsuits
> and claims against the State involve numerous disputed factual
> questions and unresolved legal questions. Given the complexity of the
> litigation, numerous disputed factual questions, unresolved legal issues,
> and risks of continued litigation, the parties believe the MHSL/State
> Tentative Settlement is reasonable.

 (Doc. 58-8).

The Asbestos Claims Court's January 7, 2019 order granting this joint motion

and approving the settlement includes the following:

> Litigation against the State concerning alleged asbestos-related injury
> and damages arising out of the State's alleged actions/inactions at the
> W.R. Grace operations in and near Libby, Montana, has spanned nearly
> 18 years.  The facts and legal theories involving that litigation are
> extraordinarily complex.  The MHSL Libby Mine Claimants' lawsuits
> and claims against the State involve numerous disputed factual
> questions and unresolved legal questions.  Given the complexity of the
> litigation, numerous disputed factual questions, unresolved legal issues,
> and risks of continued litigation, the MHSL/State Tentative Settlement
> is reasonable.

(Doc. 73-3).

Plaintiffs do not contest the authenticity or accuracy of Docs. 58-6, 58-8, 73-

1 or 73-3. The Court therefore may consider these documents, the contents of which

it takes as true, in deciding National's motion to dismiss. *United States v. Ritchie*,

342 F.3d 903, 908 (9th Cir. 2003); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.

1994).

Additionally, during oral argument on November 13, 2024, Plaintiffs' counsel

affirmed that Plaintiffs' claims against the State involved numerous factual and legal

questions, stating in open Court:

> MR. MCGARVEY:  [D]id this [tort litigation] involve numerous
> factual questions? Yes, it did.  Did it involve unresolved legal
> questions? Yes, it did.

(Doc. 76, Nov. 13, 2024 Hr'g Tr. at 33:26-28).

8

"[J]udicial admissions are an evidentiary question governed by federal procedural law." *Davis v. PacificSource Health Plans*, 2020 WL 1812114 *1 (D. Mont. April 4, 2020), citing *American. Title Ins. v. Lacelaw*, 861 F.2d 224, 226 (9th Cir.1988). "Under federal law, a judicial admission is a statement by a party that, like a stipulation, exclusively establishes a fact without the need for further proof." *Id*. "Courts have discretion to treat 'factual statements made in briefs and at oral argument' as judicial admissions." *Id*.    The Court concludes that Plaintiffs' statements that their claims against the State involved numerous disputed factual questions, unresolved legal questions and significant risks of continued litigation are judicial admissions that are binding on Plaintiffs in this action.

The Court further determines that these judicial admissions are subject to the doctrine of judicial estoppel which "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996).  Three factors typically inform a judicial estoppel analysis:

    i.   the "party's later position must be 'clearly inconsistent' with its earlier position";

    ii.  "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'"; and

      iii.    "the party seeking to assert an inconsistent position
               would derive an unfair advantage or impose an unfair
               detriment on the opposing party if not estopped."

*New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

The Court agrees with National that all three factors are met in this case. Plaintiffs' position in this action that the State's liability for Plaintiffs' tort claims was reasonably clear (Doc. 54, ¶ 11) and that National had no reasonable basis in law or in fact to contest the claims or the amount of the claims (Doc. 54, ¶ 79), are wholly inconsistent with Plaintiffs' prior statements to the State District Court and the Asbestos Claims Court.  (Docs. 58-6 and 58-8) .  Second, Plaintiffs persuaded the State District Court and the Asbestos Claims Court to accept their earlier position (Docs. 73-1 and 73-3), creating the perception that either the State District Court and the Asbestos Claims Court were misled, or this court is currently being misled. Third, Plaintiffs would secure an unfair advantage by being permitted to secure monetary settlements from the State by taking one position with the State District Court and the Asbestos Claims Court and then turning around and taking an inconsistent position in this action when seeking to recover damages from National.

The application of judicial estoppel is not confined to inconsistent positions taken in the same litigation but is also appropriate to bar litigants from making incompatible statements in two different cases. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001).  "[W]here a party assumes a certain position

10

in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *New Hampshire*, 532 U.S. at 749. Plaintiffs clearly stated that their claims against the State involved "numerous disputed factual questions and unresolved legal questions" and "significant risks of continued litigation to all parties" and cannot now contend that the State's liability was reasonably clear or that National did not have a reasonable basis in fact or law to contest their claims. The Court cannot allow Plaintiffs to "play fast and loose with the courts" by adopting such contradictory positions. *Hamilton,* 270 F.3d at 782.

The next issue is the effect of these judicially established facts have on National's affirmative defense of having a reasonable basis in fact or law to contest Plaintiffs' claims. To determine whether an insurer had a "reasonable basis" to contest a claim, the Court considers whether liability was "reasonably clear." *Shepard v. Farmers Ins. Exch.*, 477 P.3d 1114, ¶ 17. (Mont. 2020) (applying "reasonably clear" standard to dismissal of UTPA claim was appropriate). Liability is "reasonably clear" when a reasonable person, with knowledge of the relevant facts and law, would conclude, for good reason, that the defendant is liable to the plaintiff. *Peterson v. St. Paul Fire & Marine Ins. Co.*, 239 P.3d 904, ¶ 39 (Mont. 2010). "[R]easonably clear" liability is established when it is "clear enough" that reasonable people assessing the claim would agree on the issue of liability, and that the facts,

11

circumstances, and applicable law leave little room for objectively reasonable debate about whether liability exists.  *Id.*  Although whether liability is reasonably clear is generally a question of fact, here Plaintiffs' judicial admissions establish that National had a reasonable basis in law or fact for contesting their claims.

In evaluating this affirmative defense, the Court must look at the legal landscape as it existed during the relevant time. *Id.* During the relevant time between 2015 when National became aware of Plaintiffs' claims and the settlement of such claims in 2017 and 2019, the legal landscape includes Plaintiffs' judicial admissions that their underlying claims "involved numerous disputed factual questions and unresolved legal questions" and "significant risks of continued litigation to all parties."

The Court finds that Plaintiffs' clear and unequivocal judicial admissions, accepted as true by the State District Court and the Asbestos Claims Court, establish that the State's liability for Plaintiffs' claims was never "reasonably clear" because there was room for "objectively reasonable debate" about the State's liability to Plaintiffs. *Shepard,* 477 P.3d at ¶ 17. It defies logic that Plaintiffs would make these representations to the State District Court and the Asbestos Claims Court if the "numerous disputed factual questions and unresolved legal questions" did not create "objectively reasonable" debate concerning the State's liability and/or the amount of Plaintiffs' claims.  Otherwise, there would have been no reason for Plaintiffs to

make these representations in the first place.

Furthermore, Mont. R. Civ. P. 23 requires that a settlement agreement in a class action proceeding must be approved by a district court after a determination that the settlement is "fair, adequate and reasonable." *Pallister v. Blue Cross and Blue Shield of Montana*, 285 P.3d 562, ¶ 25 (Mont. 2012). In making this determination, the factors the reviewing court must weigh are the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation. *Id.* at ¶ 38. Any argument by Plaintiffs in this action that their representations to the State District Court and the Asbestos Claims Court that the "disputed factual questions" and "unresolved legal questions" that created "significant risks of continued litigation to all parties" were not reasonable questions would wholly undermine the State District Court's and the Asbestos Claim Court's determinations that the settlements they approved were fair, equitable and reasonable under Mont. R. Civ. P. 23. After all, the State District Court and the Asbestos Claims Court expressly relied on these very representations in approving Plaintiffs' settlements with the State.

The Court therefore determines Plaintiffs' clear and unequivocal judicial admissions establish National's affirmative defense of having a reasonable basis in law or in fact for contesting Plaintiffs' claims. *Lyons v. Warner*, No. CV-23-40- H-BMM, 2023 WL 7301237 at *3 (D. Mont. Nov. 6, 2023). Accordingly, Plaintiffs'

first (UTPA), second (common law bad faith) and third (common law bad faith)

causes of action fail to state claims upon which relief may be granted.

### 2. National had a reasonable basis in law to contest whether its policy provided the State coverage for Plaintiffs' claims.

The legal landscape between 2015, when National became aware of Plaintiffs'

claims, until the settlement of their claims in 2017 and 2019, included a declaratory

judgment action National filed against the State in 2012, seeking a declaration of its

rights and obligations under the general liability insurance policy it issued to the State

for the period between July 1, 1973, and July 1, 1975. *National Indem. Co. v. State*,

499 P.3d 516 (Mont. 2021). The district court entered its judgment on August 6, 2019.

*Id.* at ¶ 18.[1] National appealed. On November 23, 2021, the Montana Supreme Court

affirmed in part, reversed in part and remanded the action back to the district court for

limited proceedings. *Id.*

An insurer does not act in bad faith and is not liable for failing to settle third-

party claims if it had a reasonable basis in law for contesting coverage. *West for Lee*

*v. United Services Automobile Association*, 384 P.3d 58, ¶ 10 (Mont. 2016). Whether

National had a reasonable basis in law for contesting coverage requires an analysis of

whether the law in effect at the time, caselaw or statutory, provided sufficient guidance

---

[1] At this point in time, the Round 2 settlements had been finalized approximately 16 months earlier and the Round 3 settlements had been finalized approximately 7 months earlier.

to signal to National that its grounds for denying the claims were not meritorious. *Id.*, citing *State Farm Mut. Auto Ins. Co. v. Freyer*, 312 P.3d 403, ¶ 35 (Mont. 2013). National was entitled to challenge whether its policy provided the State coverage for Plaintiffs' claims based on debatable law or facts, and not be held liable for bad faith provided its position was not wholly unreasonable. *Palmer by Diacon*, 861 P.2d at 902.

The *National Indem. Co.* court analyzed National's duty to defend all the underlying asbestos claims against the State and determined that National was properly providing a defense to the State for Plaintiffs' claims.[2]  National was therefore entitled to raise coverage defenses for Plaintiffs' claims. *National Indem. Co.*, 499 P.3d. at ¶¶ 36-44.

Although the *National Indem. Co.* court ultimately determined in 2021 that National's coverage defenses did not preclude coverage to the State for Plaintiffs' claims, it did not determine that National's coverage defenses were unreasonable. *Id.* at ¶¶ 53-86.  Significantly, Justice McKinnon dissented from the majority's opinion rejecting National's coverage defenses.  In her dissent, Justice McKinnon reasoned that National's policy would not provide the State coverage for Plaintiffs' claims

---

[2] Plaintiffs' Amended Complaint (see ¶ 9) does not specifically state when or to whom they submitted their claims. However, based upon the date(s) Plaintiffs claims were settled, *National Indem. Co Inc.* makes it clear that Plaintiffs' claims were settled after 2012 and were part of the "future claims".  *National Indem. Co, 499 P.3d 516 at ¶¶ 17-20.*

under Montana law because: (1) the State's intentional act of failing to disclose the *known* health hazards to the mine workers, which led to an *expected* injury, does not constitute an "occurrence" under the policy; and (2) the State was aware at the policy's inception that a *known* loss would likely ensue.  *Id.* at ¶¶ 128 - 133.  Justice McKinnon's dissent reveals that National's coverage defenses did not lack merit, were based upon debatable law, and were not wholly unreasonable.

Plaintiffs' Amended Complaint presupposes that National should have predicted the final coverage outcome and attempted to settle Plaintiffs' claims prior to this determination being made.  That is not the law.  During the legal landscape from 2015 when Plaintiffs filed their claims against the State through the time Plaintiffs settled their claims, National was fully complying with its duty to defend the State on Plaintiffs' claims. Accordingly, while the declaratory judgment action was ongoing and National was awaiting a legal determination from the courts regarding its coverage defenses, the law did not require National to attempt to effectuate a settlement of Plaintiffs' claims.  *Freyer*, 312 P.3d at ¶ 54. (Mont. 2013). Rather, National's coverage defenses provided it with a reasonable basis in law for contesting coverage and, therefore, National cannot be held liable for acting in bad faith for failing to attempt to settle Plaintiffs' claims. *West for Lee,* 384 P.3d at ¶ 10 (Mont. 2016).

Plaintiffs argue, however, that National's affirmative defense of having a reasonable basis in law to contest Plaintiffs' claims is an issue of fact that a jury must decide. (Doc. 62, pp. 18-20). Plaintiffs rely upon *Estate of Gleason v. Central United Life Ins. Co.* 350 P.3d 349 (Mont. 2014) to support this position. In *Gleason*, the court addressed whether a determination of having a "reasonable basis in law" under Mont. Code Ann. §33-18-242(5)[3] was an issue of fact or law. The Court reaffirmed that questions of reasonableness are typically factual matters for the jury. *Id.* at ¶ 60. However, the *Gleason* court recognized the exception established in *Redies v. Attys. Liab. Prot. Society*, 150 P.3d 930, ¶ 35 (Mont. 2007), which held that an insurer's "reasonable basis in law" is a question of law for the court to decide where the insurer's basis in law was grounded on a legal conclusion and no issues of fact remain in dispute.

The *Gleason* court found the *Redies* exception inapplicable because "the Estate had raised questions about whether the claim here was rejected based on a nationwide policy that had little or nothing to do with considerations of Montana law." *Gleason*, 350 P.3d 349 at ¶ 62. Plaintiffs argue that their Amended Complaint (Doc. 54, ¶¶ 14-32 and ¶¶ 75-78) similarly raises factual issues about whether National's delay in settling their claims was motivated by its alleged nationwide policy to delay claim

---

[3] §33-18-242(5) MCA is now §33-18-242(6) MCA

resolution to increase the float profit on time-value of the delayed claim payment rather than on considerations of Montana law.  (Doc. 62, pp. 26-28).

*Gleason* is distinguishable from the present action. In *Gleason*, the issue was whether the insurer had properly considered Montana law regarding the notice-prejudice rule when denying a late-filed claim.  The district court allowed the jury to hear testimony about the insurer's nationwide policy to deny late claims regardless of applicable state law. *Gleason*, 350 P.3d at ¶ 62.

While Plaintiffs allege that National also acted irrespective of Montana law, (Doc. 54, ¶ 79), they fail to allege how National disregarded Montana law in asserting its coverage defenses. As discussed above, the coverage defenses National raised in *National Indem. Co.* were well-grounded under Montana law existing at the time. Moreover, *Gleason* involved a first-party claim where the insured was challenging the reason for the denial of coverage. Here, National's coverage contest with its insured (the State) was thoroughly analyzed in *National Indem. Co.*'s majority and dissenting opinions. The State raised no allegations of ulterior motives regarding National's coverage defenses.  These  distinctions demonstrate *Gleason's* holding does not apply to this action.

The coverage determination in *National Indem. Co.* did not present a question of fact as the interpretation of an insurance policy presents a question of law. *National Indem. Co.,* 499 P.3d at ¶ 54.  Further, under the UTPA and common law bad faith

18

whether an insurer was reasonable in its interpretation of legal precedent in its coverage determination is a question of law for the court. *Freyer,* 312 P.3d at ¶ 48.

The Court determines that even taking Plaintiffs' allegation that the State's liability was reasonably clear as true, National's duty to attempt to effectuate settlement of Plaintiffs' claims did not yet arise during the legal landscape that existed between 2015 and 2019, when National was legitimately pursuing its coverage defenses. *Freyer*, 312 P.3d at ¶ 54.  Accordingly, based upon National's reasonable basis in law for contesting whether its policy provided coverage to the State for Plaintiffs' claims, Plaintiffs' UTPA and common law bad faith claims set forth in Counts 1, 2 and 3 of their Amended Complaint fail to state claims upon which relief may be granted for this reason as well.

### B.  Count 4 of Plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted.

Plaintiffs' fourth cause of action alleges that National violated its duties under *Ridley v. Guaranty National Ins. Co.*, 951 P.2d 987, 993 (Mont. 1997), by failing to make advance payments of medical expenses to Plaintiffs when the State's liability was reasonably clear. (Doc. 54, ¶¶ 99-101).  The Montana Supreme Court explained in *Teeter v. Mid- Century Ins. Co*., 406 P.3d  464, ¶ 15 (Mont. 2017), that "*Ridley*" is a two- part test: (1) whether  liability  is  reasonably  clear and (2) whether  it is reasonably clear that a medical  expense  is causally  related to the accident."  Also,

the statute of limitations for non-payment of *Ridley* claims is three (3) years and accrues when the insurer refuses the claimant's demand for medical expenses and lost wages. *Ayotte v. Am. Econ. Ins. Co.,* CV 09-57-BU-RFC-CSO, at *16 (D. Mont. Jan. 8, 2010).

National argues the only *Ridley* demands any Plaintiff made to it were made on February 9, 2016, with a denial from National on March 2, 2016. (Doc. 62-1, Exhibit 3). National argues, therefore, that since all the *Ridley* claims alleged in the Amended Complaint accrued on March 2, 2016, and Plaintiffs filed their initial Complaint on May 30, 2019, Plaintiffs' *Ridley* claims are barred by the three-year statute of limitations. National rejected Plaintiffs' *Ridley* demands on March 2, 2016. (Doc. 62-3).

The Court agrees with National. In addition to Count IV failing because National had a reasonable basis in law or in fact for contesting Plaintiffs' claims, the alleged *Ridley* violations fail because they are barred by the applicable statute of limitations. These claims were time-barred as of March 2, 2019.

When an affirmative defense is obvious on the face of a complaint, a defendant can raise that defense in a motion to dismiss. *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). In this case, Plaintiffs' *Ridley* claims being barred by the statute of limitations is apparent on the face of the Amended

Complaint. Therefore, Count 4 of Plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted.

### C.  **Plaintiffs' Fifth Cause of Action seeks a remedy and not a substantive cause of action and fails to state a cognizable legal theory.**

Plaintiffs' fifth cause of action asserts a claim for "disgorgement" alleging that National should be required to disgorge to Plaintiffs the profits it made once they asserted clear liability claims to the State. (Doc. 54, pp. 47-54). Plaintiffs concede that disgorgement is merely an equitable remedy and not a substantive claim for relief. (Doc. 62, p. 35).   The claim is based upon Plaintiffs' contention that "National has been unjustly enriched in the amount of the Investment Profit that National realized on the monies that *should have been paid to the plaintiffs and the class members between the date that it should have been paid and the date that it was paid or will be paid.*" (Doc. 54, ¶ 119) (emphasis added).  The UTPA provides a legal remedy to plaintiffs who claim that the insurer "should have paid" but failed to do so.   Equitable remedies, like disgorgement, are available only when an adequate legal remedy does not exist. *N. Cheyenne Tribe v. Roman Catholic Church*, 296 P.3d 450, ¶ 39 (Mont. 2013).  Because the UTPA provides adequate remedies at law, Plaintiffs' request for equitable relief must be denied.

### E. **Plaintiffs' Amended Complaint cannot be saved by further amendment.**

Finally, amendment of Plaintiffs' Amended Compliant would be futile as they cannot avoid their judicial admissions or the effect of National's affirmative defenses Therefore, it is "clear that the complaint cannot be saved by further amendment." *Dumas v. Kipp*, 90 F.3d 386, 389 (9th Cir. 1996).

## IV. <u>CONCLUSION</u>

For the reasons discussed above, National's Motion to Dismiss Plaintiffs' Amended Complaint is GRANTED.

DATED this 10th day of July 2025.

John Johnston
United States Magistrate Judge